| | |
|---|---|
| Carvis Williams, | |
| *On behalf of himself and those similarly situated*, | |
| Plaintiff, | COMPLAINT AND JURY TRIAL DEMAND |
| v. | |
| GBR Pizza, Inc. d/b/a Domino's, Gerald B. Rhodes, John Doe 1-10, Doe Corp. 1-10 | |
| Defendants. | |

## Class and Collective Action Complaint

1.      Carvis Williams, on behalf of himself and all similarly-situated individuals, brings this action against Defendants GBR Pizza, Inc., Gerald B. Rhodes, John Doe 1-10, and Doe Corp. 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.6, *et seq.*

2.      Defendants operate numerous Domino's Pizza franchises in North Carolina (the "Defendants' Domino's stores").

1

3.     Defendants repeatedly and willfully violated the Fair Labor Standards Act and North Carolina Wage and Hour Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.     Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA and the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.6, and N.C. Gen. Stat. 95-25.8, *et seq*.

5.     All delivery drivers at the Defendants' Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6.     Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7.     Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in North Carolina, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of N.C. Gen. Stat. 95-25.6 and N.C. Gen. Stat. 95-25.8, *et* seq.

## JURISDICTION AND VENUE

8.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's North Carolina law claims.

10.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendant's place of business is in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**PARTIES**

**<u>Plaintiff</u>**

**Carvis Williams**

11.    Plaintiff Carvis Williams is a resident of Dudley, North Carolina and, at all times material herein, Plaintiff has worked within the boundaries of the Middle District of North Carolina.

12.    Plaintiff is an "employee" of all of the Defendants as defined in the FLSA and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §95-25.2.

13.    Plaintiff has given written consent to join this action.

**<u>Defendants</u>**

**GBR Pizza, Inc.**

14.    Defendant GBR Pizza, Inc. is a domestic corporation authorized to do business under the laws of North Carolina.

15.    GBR Pizza, Inc. is the corporate entity that appears on Plaintiff's paystubs for the work he completes for Defendants.

16.    GBR Pizza, Inc. was founded by Gerald B. Rhodes.

17.    GBR Pizza, Inc. operates the Defendants' Domino's stores.

18.    GBR Pizza, Inc. is headquartered at 1600 South Horner Blvd., Sanford, NC 27330.

19.    GBR Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

20.     GBR Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

21.     At all relevant times, GBR Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

22.     GBR Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and N.C. Gen. Stat. §95-25.2.

23.     At all relevant times, GBR Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

24.     GBR Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Gerald B. Rhodes**

25.     Defendant Gerald B. Rhodes is an owner and operator of GBR Pizza, Inc. and the Defendants' Domino's stores.

26.     Gerald B. Rhodes founded Defendants' Domino's stores.

27.     Gerald B. Rhodes is the president of Defendants' Domino's stores.

28.     Gerald B. Rhodes is individually liable to Defendants' Domino's stores delivery drivers under the definitions of "employer" set forth in the FLSA and N.C. Gen. Sta. 95-25.2 because he owns and operates the Defendants' Domino's stores, serves as a manager and/or member of GBR Pizza, Inc., ultimately controls significant aspects of Defendants' Domino's stores day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

29.     At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has had financial control over the operations at each of the Defendants' Domino's stores.

30.     At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has a role in significant aspects of the Defendants' Domino's stores' day to day operations.

31.     At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has had control over the Defendants' Domino's stores' pay policies.

32.     At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has had power over personnel and payroll decisions at the Defendants' Domino's stores, stores, including but not limited to influence of delivery driver pay.

33.     At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Domino's stores.

34.     At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

35.     At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has had the power to transfer the assets and liabilities of Defendants' Domino's stores.

36. At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has had the power to declare bankruptcy on behalf of Defendants' Domino's stores.

37. At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

38. At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes has had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

39. At all relevant times, by virtue of his role as owner and operator of GBR Pizza, Inc., Gerald B. Rhodes had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

40. The Defendants' Domino's stores function for Gerald B. Rhodes's profit.

41. Gerald B. Rhodes has influence over how the Defendants' Domino's stores can run more profitably and efficiently.

**John Doe 1-10**

42. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the Delivery Drivers at the Defendants' Domino's stores as that term is defined by the FLSA and North Carolina wage law.

43. Upon information and belief, Gerald B. Rhodes has entered into co-owner relationships with a number of his managers and business partners, and those individuals might

6

also qualify as "employers" of Plaintiff and the Delivery Drivers at the Defendants' Domino's stores as that term is defined by the FLSA and North Carolina wage law.

44. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Doe Corp. 1-10**

45. Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Domino's stores, and qualify as "employers" of Plaintiff and the Delivery Drivers at the Defendants' Domino's stores as that term is defined by the FLSA and North Carolina wage law.

46. Upon information and belief, Gerald B. Rhodes owns and/or operates, in whole or in part a number of other entities that may make up part of the Defendants' Domino's operation.

47. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

FACTS

**Class-wide Factual Allegations**

48. During the relevant time period, Defendants have operated numerous Defendants' Domino's stores.

49. The primary function of the Defendants' Domino's stores is to sell pizza and other food items to customers, whether they carry out or have their food delivered.

50. Some or all of the Defendants' Domino's stores employ delivery drivers.

51. Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Defendants' Domino's stores.

7

52.     All delivery drivers employed at the Defendants' Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

53.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Domino's stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

54.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage for the hours they worked while completing deliveries.

55.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked.

56.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

57.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

58.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cell phone and data charges all for the primary benefit of Defendants.

59.     Some of the Defendants' Domino's stores do not track or record their delivery drivers' actual expenses.

8

60.     None of the Defendants' Domino's stores track or record their delivery drivers' actual expenses.

61.     Some of the Defendants' Domino's stores do not reimburse delivery drivers for their actual expenses.

62.     None of the Defendants' Domino's stores reimburse delivery drivers for their actual expenses.

63.     Some of the Defendants' Domino's stores do not reimburse delivery drivers at the IRS standard business mileage rate.

64.     None of the Defendants' Domino's stores reimburse delivery drivers at the IRS standard business mileage rate.

65.     Some of the Defendants' Domino's stores do not reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

66.     None of the Defendants' Domino's stores reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

67.     Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement payment that is less than the IRS standard business mileage rate for each mile they drive while completing deliveries for Defendants' Domino's stores.

68.     For example, until a few months ago, Plaintiff received $.26 per delivery for every mile he drove while making deliveries.

69.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.      2018: 54.5 cents/mile
    b.      2019: 58 cents/mile

c. 2020: 57.5 cents/mile

d. 2021: 56 cents/mile

70. The delivery drivers at Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

71. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and North Carolina law.

72. At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Domino's stores.

73. All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

74. Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

75. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

10

76.     Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the Defendants' Domino's stores.

77.     Defendants have willfully failed to pay federal and North Carolina state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's stores.

### Plaintiff's Individual Factual Allegations

78.     Plaintiff has worked at Defendants' Domino's stores store from 2005 to present at the Goldsboro, North Carolina location.

79.     Plaintiff is subject to the same or substantially similar compensation terms as other drivers for the Defendants' Domino's stores.

80.     Plaintiff is paid $8.00 per hour inside and outside the store.

81.     Plaintiff is reimbursed on a per mile basis when completing deliveries for Defendants.

82.     Plaintiff was reimbursed $.26 per mile until a few months ago.

83.     Plaintiff is now reimbursed $.36 per mile.

84.     Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

85.     Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

86.     Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage,

11

automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

87.     Defendants do not track the actual expenses incurred by Plaintiff.

88.     Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

89.     Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

90.     Defendants do not reasonably approximate the expenses incurred by Plaintiff while he completed deliveries for Defendants.

91.     During Plaintiff's employment with Defendants, Defendants have failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

92.     Plaintiff regularly makes approximately 2 to 3 deliveries per hour during the hours he works as a delivery driver.

93.     Plaintiff regularly drives approximately 8 miles per delivery.

94.     In 2020, for example, the IRS business mileage reimbursement has been $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Defendants reimbursed Plaintiff $.26 per mile. Using the 2020 IRS standard business mileage rate as a reasonable approximation of his expenses, Defendants' policy under-reimbursed Plaintiff by $.315 per mile ($.575-$.26). Considering Plaintiff's estimate of about 8 average miles per delivery, Defendants under-reimbursed him by about $2.52 per delivery ($.315 x 8). Considering Plaintiff's estimate of approximately 2.5 deliveries per hour, Defendants under-reimbursed Plaintiff by about $6.30 per hour ($2.52 x 2.5).

12

95.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

## Collective Action Allegations

96.     Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

97.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

98.     Defendants' unlawful conduct is pursuant to a corporate policy or practice.

99.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

100.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

101.    The First Count are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

102.    The FLSA Collective members are readily identifiable and ascertainable.

13

103.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

104.    Plaintiff brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants in the State of North Carolina since the date 2 years preceding the filing of Plaintiffs' original Complaint ("Rule 23 Class").

105.    The North Carolina claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Rule 23 Class.

106.    The North Carolina claims satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

107.    Questions of fact and law common to the Rule 23 class predominate over any questions affecting only individual members. The questions of law and fact common to the Rule 23 Class arising from Defendants' actions include, without limitation:

a.    Whether Plaintiff and the members of the Rule 23 Class all drive their personal cars to complete deliveries for Defendants;

b.    Whether Plaintiff and the members of the Rule 23 Class are required to pay for job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties;

c.    Whether Defendants failed to pay minimum wages to members of the Rule 23 Class as required by the NCHWA;

14

d.   Whether Defendants failed to pay the Rule 23 Class all wages earned by them and promised to them in violation of the NCWHA;

e.   Whether Defendants reimbursed the Rule 23 Class for their actual expenses;

f.   Whether Defendants reimbursed the Rule 23 Class at the IRS standard business mileage rate;

g.   Whether Defendants reasonably approximated the expenses incurred by Plaintiff and the Rule 23 Class while they were completing deliveries;

h.   Whether Defendants' formula and/or methodology used to calculate payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the members of the Rule 23 Class; and

i.   Whether Defendants paid the Rule 23 Class exactly, or very close to, North Carolina's minimum wage for time spent performing those duties.

The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of state law claims.

108.    A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Rule 23 Class.

109.    Plaintiff is an adequate representative of the Rule 23 Class because he is a member of the Rule 23 Class and his interests do not conflict with the interests of the members of the Rule 23 Class that he seeks to represent. The interests of the members of the Rule 23 Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

110.    Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Rule 23 Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this court due to the relatively small recoveries per member of the Rule 23 Class, and there are no material difficulties impairing the management of a class action.

111.    It would be impracticable and undesirable for each member of the Rule 23 Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Rule 23 Class members.

112.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

113.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

114.    Notice can be provided by means permissible under Rule 23.

115.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

116.    There are more than 50 Rule 23 Class members.

117.     Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

118.     Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with

119.     In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

120.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

121.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

122.     Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

123.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

124.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

125. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

126. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 2
### Failure to Pay Minimum Wages – N.C. Gen. Stat. 95-25.6
### (On Behalf of Plaintiff and the Rule 23 Class)

127. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

128. The North Carolina Wage and Hour Act states that every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. *See* N.C. Gen. Stat. 95-25.6.

129. Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

130. Plaintiff and the Rule 23 Class are entitled to their unpaid wages and unlawful deductions, liquidated damages in an amount equal to their unpaid wages and unlawful deductions, and interest for the two years preceding the filing of the complaint in this matter.

131. Plaintiff and the Rule 23 Class are further entitled to recover attorneys' fees and costs.

132. As a result of Defendants' willful violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 3
## Withholding of Wages – N.C. Gen. Stat. §95-25.8
## (On Behalf of Plaintiff and the Rule 23 Class)

133.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

134.    The North Carolina Wage and Hour Act states than an employer is permitted to withhold a portion of an employee's wages provided that the employer has written authorization from the employee which is signed on or before the payday for the pay periods for which the deduction is made; indicated the reason for the deduction; and states the actual dollar amount of wages which shall be deducted from one or more paychecks. *See* N.C. Gen. Stat. 95-25.8(a)(2).

135.    Defendants have not obtained written authorization from the Plaintiff or the Rule 23 Class to withhold a portion of their wages to cover their delivery-related expenses, which constitute *de facto* deductions from pay.

136.    Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

137.    Plaintiff and the Rule 23 Class are entitled to their unpaid wages and unlawful deductions, liquidated damages in an amount equal to their unpaid wages and unlawful deductions, and interest for the two years preceding the filing of the complaint in this matter.

138.     Plaintiff and the Rule 23 Class are further entitled to recover their attorneys' fees and costs.

139.    As a result of Defendants' willful violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiff Carvis Williams prays for the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.      Unpaid minimum wages, unpaid overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations for Plaintiffs and the FLSA Collective.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.      A declaratory judgment that the practices complained of herein are unlawful under the North Carolina Wage and Hour Act.

F.      An award of unpaid wages, unlawful deductions, and withheld wages due under the North Carolina Wage and Hour Act.

G.      An award of liquidated damages under the North Carolina Wage and Hour Act.

H.      An award of interest under the North Carolina Wage and Hour Act.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Mary-Ann Leon*
Mary-Ann Leon
N.C. State Bar No. 26476
THE LEON LAW FIRM, P.C.
704 Cromwell Dr., Ste E
Greenville, NC 27858
Telephone: (252) 830-5366
*maleon@leonlaw.org*
www.leonlaw.org
Local Rule 83.1(d) Counsel

Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
Philip J. Krzeski (Ohio Bar # 0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
www.billerkimble.com

*Counsel for Plaintiff*

21

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Mary- Ann Leon*

Mary-Ann Leon
