| | |
|---|---|
| Carvis Williams, *et. al*, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:21-CV-00828 |
| Plaintiff, | |
| v. | |
| GBR Pizza, Inc. d/b/a Domino's, *et al.*, | |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiff Carvis Williams asks the Court to preliminarily approve the settlement between himself, the agreed upon FLSA collective, and the agreed upon Rule 23 class (collectively, "Plaintiffs"), and the following Defendants: GBR Pizza, Inc. d/b/a Domino's and Gerald B. Rhodes (collectively, "Defendants").

The proposed Settlement and Release Agreement, attached as Exhibit 1, resolves the collective and class-wide claims against the Defendants raised in this lawsuit. Defendants do not oppose this motion.

As explained further in the attached Memorandum of Law, Plaintiff requests that the Court: (1) preliminarily approve the proposed settlement; (2) provisionally certify the settlement class and collective action described in the attached Memorandum of Law and Settlement Agreement; (3) approve the form, content, and distribution of the class notice and claim form; (4)

1

designate Plaintiff Carvis Williams as class representative; (5) preliminarily approve the service

award for Plaintiff Williams; (6) appoint Plaintiffs' counsel as class counsel and preliminarily

approve Class Counsels' request for attorney's fees and costs and; (7) schedule a final fairness

hearing approximately 150 days after preliminary approval.

Respectfully submitted,

*/s/Laura E. Farmwald*
Mary-Ann Leon
N.C. State Bar No. 26476
The Leon Law Firm, P.C.
704 Cromwell Dr., Ste E
Greenville, NC 27858
Telephone: (252) 830-5366
*maleon@leonlaw.org*
www.leonlaw.org
Local Rule 83.1(d) Counsel

Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
Laura E. Farmwald (By Special Appearance) (Ohio
Bar #0095304)
Samuel D. Elswick, Jr. (By Special Appearance)
(Ohio Bar # 100327)
8044 Montgomery Road, Suite 515
Cincinnati, Ohio 45236
Telephone: 513-715-8712
Facsimile: 614-340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*selswick@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs*

2

## 1. Introduction

Plaintiff and Defendants have reached a settlement that resolves all claims raised in this lawsuit, as set forth in the Settlement and Release Agreement ("Settlement Agreement," attached as Exhibit 1)[1]. The proposed settlement is fair, reasonable, and adequate, and satisfies all of the criteria for approval. Accordingly, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for preliminary approval of the Parties' Settlement Agreement and authorize the Parties to begin the administration and notice process.

## 2. Background and Procedural History

Plaintiffs delivered pizzas and other food and drink items for Defendants' Domino's Pizza restaurant franchise. Plaintiff Carvis Williams brought this case on behalf of himself and similarly situated delivery drivers to recover unpaid wages claimed under the FLSA and North Carolina law.

This lawsuit centers around Plaintiff's allegations that Defendants inadequately reimbursed their delivery drivers for the drivers' delivery and driving-related expenses. (Complaint, Doc. 1). Plaintiff alleges that the drivers' vehicles are "tools of the trade" under 29 C.F.R. § 531.35. Because Defendants required the drivers to provide their own vehicles, Plaintiff alleges Defendants were required to fully reimburse the drivers for the use of those cars and the

---

[1] The attached Settlement Agreement has been agreed upon but is unsigned. The unsigned agreement is attached in order to comply with the deadline to file the instant Motion and Agreement. A signed copy of the Settlement Agreement will be supplemented shortly.

3

alleged failure to adequately reimburse the drivers caused their wages to fall below the federal minimum wage. (*Id.*).

Plaintiff contends that Defendants were required to either (1) reimburse each driver their actual vehicle expenses or (2) reimburse each driver at the IRS standard business mileage rate. *See, e.g., Parker v. Battle Creek Pizza, Inc.*, No. 1:20-cv-277, 2022 U.S. Dist. LEXIS 76990, *11 (W.D. Mich. April 28, 2022). In this case, Plaintiff alleges that Defendants do not record actual expenses, so they are required to reimburse at the IRS standard business mileage rate. Defendants, on the other hand, argue they are permitted to reimburse a "reasonable approximation" of the drivers' expenses, and that they have done so. *See, e.g., Bradford v. Team Pizza, Inc.,* 568 F. Supp. 3d 877 (S.D. Ohio Oct. 19, 2021).

Plaintiff alleges that Defendants' reimbursement policies and practices not only violated federal minimum wage laws, but also violated the North Carolina Wage and Hour Act (N.C. Gen. Stat. §§ 95-25.6 and 95-25.8). Defendants denied, and continue to deny, Plaintiff's allegations and any liability.

### 2.1.    Procedural Posture

Plaintiff Williams filed this lawsuit on October 26, 2021. (Doc. 1).

On January 26, 2022, Defendants filed a Motion to Dismiss and to Strike Plaintiff's Class Allegations. (Doc. 13). In their Motion to Dismiss, Defendants referenced a prior settlement of similar claims asserted by an earlier generation of pizza delivery drivers that was filed under seal. *Id*. Plaintiff opposed Defendants' Motion to Dismiss and opposed Defendants' request to file the settlement agreement from the earlier case under seal. (Doc. 19, Doc. 20). Defendants' Motion to

4

Dismiss and request to file the settlement agreement under seal were fully briefed on April 19, 2022. (Doc. 30).

On April 6, 2022, Plaintiff filed a Rule 26(f) Report, noting that Defendants objected to participating in a Rule 26(f) conference or commencing discovery until the Court ruled on their Motion to Dismiss and/or the Court calendared a scheduling conference. This issue was fully briefed as of April 20, 2022. (Doc. 31).

On May 9, 2022, before Defendants' Motion to Dismiss was decided or Plaintiff's Rule 26(f) Report was addressed by the Court, the Parties agreed to stay the case, to exchange data and information necessary for evaluating settlement, and to participate in private mediation. (Joint Motion to Stay, Doc. 35; Brief in Support of Joint Motion to Stay, Doc. 36).

Prior to mediation, the Parties were able to exchange sufficient information and data to allow them to thoroughly investigate the viability of their respective claims and defenses. The mediation was facilitated by experienced wage and hour class and collective action mediator Hunter Hughes, Esq. on July 12, 2022. On July 14, 2022, the Parties agreed to a settlement in principle. The Parties thereafter fully negotiated the remaining terms of the Settlement Agreement that is attached as Exhibit 1.

### 2.2. Plaintiff's FLSA Claims

Plaintiff's FLSA legal theory is generally described above. In sum, Plaintiff alleges that Defendants' reimbursement rate was inadequate and, as a result, drove the delivery drivers' wages below the legally mandated minimum wage.

Plaintiff seeks under-reimbursed vehicle expenses, unpaid overtime wages, and the difference between the tipped wage rate paid and full minimum wage for all hours worked under

the FLSA. Plaintiff also seeks liquidated damages in the amount of 100% of unpaid wages. If the Parties did not settle, Plaintiff would have moved to conditionally certify the FLSA collective and send notice to all similarly situated delivery drivers to provide them the opportunity to join this action. Conditional certification has been granted in similar pizza delivery driver cases, but has also, in at least one instance, been denied, making the outcome of Plaintiff's motion uncertain.[2]

The extent of the potential damages at issue (if any) is based on what the Court, or jury, ultimately determines to be the proper reimbursement rate. As noted above, Plaintiff alleges that the proper reimbursement rate is the IRS standard business mileage rate. *See, e.g., Hatmaker*, 2019 U.S. Dist. LEXIS 191790, *7-9, 17-18; *Parker*, 2022 U.S. Dist. LEXIS 76990, *11. If Plaintiff wins on this issue, the damages for FLSA unpaid wages could be up to approximately $1.8 million across all possible class members (but see below regarding the class size). Defendants allege the proper reimbursement rate is a "reasonable approximation" of the vehicle expenses. *See, e.g., Bradford*, 568 F. Supp. 3d at 882-83. If Defendants win on this issue, they could then argue that what they paid was a "reasonable approximation." If this argument is successful, it could reduce the damages to zero; *i.e.*, Defendants did not violate the law at all. Alternatively, the Court, or a jury, could find that a rate higher than what Defendants paid is appropriate. In that case, the damages would be calculated as the difference between the reimbursement rate paid and the "reasonable" rate arrived at by the Court or jury.

---

[2] *See, e.g., Patzfahl v. FSM ZA, LLC*, No. 20-cv-1202, 2021 U.S. Dist. LEXIS 202912, at *12 (E.D. Wis. Oct. 21, 2021); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2020 U.S. Dist. LEXIS 39913, at *6 (S.D. Ohio Mar. 9, 2020); *Redus v. CSPH, Inc.*, No. 3:15-cv-2364, 2017 WL 2079807 (N.D. Tex.); *Tegtmeier v. PJ Iowa, LLC*, 208 F.Supp.3d 1012, at *3-21 (S.D. Iowa Sept. 21, 2016); *Bellaspica v. PJPA, LLC*, 3 F.Supp.3d 257, 260 (E.D. Pa. Mar. 11, 2014); *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632, 2012 WL 1414325 (D. Colo. Apr. 21, 2012); *but see, Eshelman v. MPFP, LLC*, No. 4:20-cv-3119, 2022 WL 2655821, at *4 (S.D. Tex. June 22, 2022).

Second, with respect to the alleged "tip credit differential" claim, the potential damages are based on Plaintiff's theory that an under-reimbursement triggers a tipped minimum wage violation and terminates the employer's ability to claim a tip credit at all. *See McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 245-246 (4th Cir. 2016). Defendants would take the position that an under-reimbursement by itself would not violate the tip credit rule. *See, e.g., Sellers v. Keller Unlimited LLC*, Case No. 2:17-cv-2758, at *3-4 (D.S.C. Nov. 6, 2019). In this case, the alleged "tip credit differential" is also contingent on the success of Plaintiff's under-reimbursement claim. Plaintiff also alleges Defendants miscalculated the delivery drivers' overtime pay rates. If Plaintiff is successful on these claims, the damages for the alleged tip-credit violations and overtime violations result in damages of approximately $140,000 across all possible class members (but see below regarding the class size).

Third, Plaintiff could also claim entitlement to FLSA "liquidated damages" in the amount of 100% of the unpaid wages, overtime violations, and tip-credit violations described above. Defendants would be entitled to present a defense to these damages, but they would have to prove that they acted in good faith and with a reasonable basis. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). The FLSA "plainly envisions liquidated damages" as the "norm for violations of § 7" of the Act, except where "the employers shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation," in which case "the court [may] exercise its discretion to deny liquidated damages." *Id.*

7

Fourth, the Parties would likely also argue about the appropriate statute of limitations. Under the FLSA, the statute of limitations is two years by default. If Plaintiff proved Defendants acted "willfully," the statute of limitations would be extended by one year. 29 U.S.C. § 255(a).

Finally, two additional factors substantially influence the amount of money actually at issue: opt-in rates and arbitration.

Factor 1: No one is part of this case for FLSA purposes unless and until they affirmatively join the lawsuit. 29 U.S.C. § 216(b). In this case, prior to the Notice being sent out to similarly situated individuals, 1 individual has joined the case. The number of individuals that elect to opt-in to the action and participate in the Settlement Agreement will affect Defendants' potential exposure. Relatedly, the statute of limitations on opt-in plaintiffs' claims continues to run until the employee opts-in to the action, unless the Court grants equitable tolling. *Lorenzo v. Prime Communs., L.P.*, No. 5:12-CV-69-H, 2014 U.S. Dist. LEXIS 93123, at *4 (E.D.N.C. May 8, 2014), citing, *Chao v. Virginia Dep't Transp.*, 291 F.3d 276, 283 (4th Cir. 2002). Since notice had not yet been sent out, absent settlement, the Parties would have disputed whether equitable tolling should apply.

Factor 2: According to Defendants' representations, approximately 72% of the putative class members signed arbitration agreements with class action waivers. This reality would have added an additional layer of complication to the FLSA collective action. First, Defendants would have objected to employees subject to arbitration agreements receiving notice of the action in the first place. *See, e.g., In re: JPMorgan Chase & Company*, 916 F.3d 494 (5th Cir. 2019); *Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020). If the Court still permitted notice over Defendants' objection, as District Courts are split on this issue and it has not yet been decided in the Fourth

8

Circuit or by this Court, and those individuals elected to join the action, Defendants would have then sought to bar them from participating in the case on account of the arbitration agreements. *See Gordon v. TBC Retail Grp., Inc.,* 134 F. Supp. 3d 1027, 1039 n.9 (D.S.C. 2015) (declining to exclude workers with signed arbitration agreements because to do so would "prematurely assume that such arbitration agreements are enforceable"); *Amrhein v. Regency Mgmt. Servs., LLC,* No. CIV. SKG-13-1114, 2014 U.S. Dist. LEXIS 36477, at *10 (D. Md. Mar. 20, 2014) (declining to exclude workers with signed arbitration agreements because it was not possible to determine which, "if any, would be subject to valid and binding arbitration"). In that case, it would be up to the Court to decide if Defendants' arbitration agreements are valid and enforceable.

### 2.3. Plaintiff's North Carolina Law Claims

Plaintiff also brings a claim under N.C. Gen. Stat. § 95-25.6 on behalf of the putative Rule 23 class. North Carolina General Statute § 95-25.6 requires employers to pay all wages due on an employee's "regular payday." This type of claim is commonly referred to as a "payday claim." Plaintiff's theory of recovery is that, by virtue of the alleged failure to pay wages due under the FLSA, Defendants did not pay the employees "all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6. *See, e.g., McLaurin v. Prestage Foods, Inc.,* 271 F.R.D. 465, 479 (E.D.N.C. 2010) ("The FLSA and state law claims are premised on the same facts and likely will succeed or fail together.").

In addition, on behalf of himself and the putative North Carolina Rule 23 Class, Plaintiff brings a claim under N.C. Gen. Stat. § 95-25.8, which prohibits employers from withholding or diverting employee wages without receiving prior written authorization. The theory of recovery is similar to the "payday claim": Defendants' alleged "deduction," "withholding," or "diversion"

9

of the under-reimbursed vehicle expenses amount violates North Carolina General Statute § 95-25.8.

For both claims, the statute of limitations is two years. N.C. Gen. Stat. § 95-25.22(f). Like the FLSA, North Carolina law allows Plaintiff to potentially recover liquidated damages in the same amount and subject to the same standard as under the FLSA. N.C. Gen. Stat. § 95-25.22(a1).

Several points are notable on the North Carolina law claims. First, the North Carolina law claims' damages overlap with those available under the FLSA, and the claims address the same underlying wages. The Parties would likely disagree regarding whether these damages "stack." Plaintiff's position is that because the three types of damages (FLSA, liquidated, and North Carolina state law damages) serve different purposes, they all apply and are recoverable. *See, e.g., Evans v. Loveland Automotive Investments, Inc.*, 632 Fed. Appx. 496, 498 (10th Cir. 2015); *Morales v. Cancun Charlies Restaurant*, No. 3:07-cv-1836, 2010 U.S. Dist. LEXIS 125516, at *26 (D. Conn. Nov. 23, 2010) ("Courts have held that plaintiffs should be able to recover liquidated damages simultaneously under the FLSA and the applicable state statute where the two statutes serve different purposes."). Defendants would argue that Plaintiff can only recover one set of unpaid wages and one set of liquidated damages.

Second, the North Carolina law claims have a shorter statute of limitations compared to the FLSA, if Plaintiff were able to prove that any potential FLSA violation was willful under the FLSA.

Third, Defendants will oppose class certification on the grounds that Plaintiff cannot meet the Rule 23 factors for certification of a class action and that 72% of the putative class members have allegedly signed arbitration agreements and, therefore, should not be included in the class.

Moreover, Plaintiffs will need to meet the stricter Rule 23 standard (as compared to the FLSA's collective action standard) to assert claims on behalf of the North Carolina law putative class.

### 2.4. Defendants' Arbitration Agreements

As discussed above, and as will be discussed in more detail below, Defendants have various potential factual and legal arguments to mitigate or eliminate some or all of Plaintiffs' claims. Defendants also have an important procedural defense—72% of the putative class members signed arbitration agreements with class action waivers.

In spite of these arbitration agreements, the Parties have agreed to include all putative class members in the settlement, even if a class member signed an arbitration agreement. In doing so, Defendants do not waive their right to enforce the agreements for any other purpose. Plaintiffs do not waive their ability to challenge the agreements for any other purpose.

### 3. Summary of Settlement Terms

The Settlement Agreement creates a fund of $950,000, inclusive of payments to class members, attorneys' fees, expenses, and service awards. (*See* Exhibit 1). Under the terms of the Agreement, the "Settlement Class" means:

> All current and former Delivery Drivers employed by GBR Pizza, Inc. at its Domino's Pizza stores from October 31, 2019, through July 14, 2022.

Twenty-eight percent (28%) of the Net Settlement Fund is to be allocated for payments to drivers who did not sign arbitration agreements ("Group 1 Drivers"). The remaining seventy-two percent (72%) of the Net Settlement Fund is to be allocated for payments to drivers who signed arbitration agreements ("Group 2 Drivers"). The Parties' settlement agreement is an "opt out" settlement for the individuals who did not sign arbitration agreements and an "opt in" settlement for those individuals who Defendants claim did sign arbitration agreements. In other words, those

11

who allegedly signed arbitration agreements must fill out a claim form during the notice period in order to receive their share of the Net Settlement Fund. While all class members who do not opt out of the settlement will release their North Carolina law claims, only those who participate in the settlement and receive a share of the Net Settlement Fund will release their FLSA claims. As such, those individuals who allegedly signed arbitration agreements but do not join the case are still free to pursue their claims elsewhere, assuming they are still within the applicable statute of limitations. Participants in the settlement will receive an individual award based on their *pro rata* share of the miles driven by all of the class members in the appropriate Group (as described above).

Upon preliminary approval, separate Notices of Settlement will be sent to Group 1 Drivers and Group 2 Drivers via email and U.S. Mail. The Notice to the Group 2 Drivers will also contain the Claim Form that these individuals will need to complete and return to participate in the settlement. The Notices of Settlement and Claim Form are attached hereto as Exhibit 2. The Notices will provide the class members the opportunity to object, opt-in (Group 2 only), or opt-out of the settlement before the Court considers whether to grant final approval. The Notice Period is 60 days.

Funds allocated for settlement administration will be deducted from the Maximum Settlement Fund.

### 4. Standard for Settlement Approval

There is a strong judicial policy in favor of settlement, in order conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *In re Microstrategy, Inc., Sec. Litig.*, 148 F.Supp.2d 654m 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 589, 594-95 (3d Cir. 2010) (there is an

"especially strong" presumption in favor of voluntary settlements "in class actions...where substantial judicial resources can be conserved by avoiding formal litigation"); Newberg §§ 11.41 ("The compromise of complex litigation can be encouraged by the courts and favored by public policy."). This includes the "strong initial presumption" in class action cases "that the compromise is fair and reasonable*." In re Microstrategy*, 148 F.Supp.2d at 663 (internal quotations omitted).

With respect to approving an FLSA settlement, courts look at whether the settlement is a fair and reasonable resolution of a *bona fide* dispute. *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014).

With respect to a class settlement, preliminary approval is the first step in the two-step settlement process. *See Horton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994). Preliminary approval allows the notice to be distributed to putative class members and for those class members to object to or opt out of the settlement. Preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Outer Banks Power Outage Litig.*, No. 17 Civ. 141, 2018 WL 2050141, *2-5 (E.D.N.C. May 2, 2018) (quoting *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010)). In other words, the purpose of preliminary approval is for the court to determine that the proposed settlement is "sufficiently within the range of reasonableness." *Id.* at *3 (citations omitted).

"Ultimately, approval of a class action settlement is committed to the sound discretion of district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re Microstrategy*, 148 F.Supp. 2d at 663

13

(quoting *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986)) (internal quotations omitted). Courts assess a proposed class settlement to determine whether, as a whole, it is fair, reasonable, and adequate to class members. *Cantu-Guerrero v. Lumber Liquidators, Inc.*, 952 F.3d 471, 484 (4th Cir. 2020); *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999); FED. R. CIV. P. 23(e)(2). The Fourth Circuit has advised courts to evaluate the following factors in determining whether to approve a class action settlement: (1) whether the settlement was the product of good faith bargaining, at arm's length, and without collusion; (2) the relative strength of the Parties' cases as well as the uncertainties of litigation on the merits and the existence of any difficulties of proof or strong defenses the likely to be encountered if the case goes to trial; (3) the complexity, expense, and likely duration of additional litigation; (4) the solvency of defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement by class members. *Cantu-Guerrero v. Lumber Liquidators, Inc.*, 952 F.3d at 484; *In re Jiffy Lube Sec. Litig.*, 927 F.3d at 159; *1988 Trust for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). These factors support approval here.

### 4.1. The proposed Settlement is the product of good-faith bargaining during extensive, arm's-length negotiations between experienced counsel.

In determining if a class settlement was reached in good faith, the Fourth Circuit advises courts to examine: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that has been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of class action litigation. *In re Jiffy Lube Sec. Litig.*, 927 F.3d at 159.

First, the case's posture and circumstances surrounding the negotiations shows that the settlement was negotiated in good faith. The Parties were engaged in heavily disputed litigation

14

from the outset—Defendants filed a Motion to Dismiss, Plaintiff disputed Defendants' attempt to file a prior FLSA settlement under seal, and the Parties disputed whether it was appropriate to start discovery at this time. *See* Docket. The Parties eventually agreed to stay proceedings after Defendants agreed to provide Plaintiff with the information he believed he would need to evaluate settlement—hours worked, wages paid, miles driven, and reimbursements paid, broken down by driver and by week. On July 12, 2022, the Parties attended an all-day mediation with experienced wage and hour class and collective action mediator, Hunter Hughes, Esq. The case did not settle at that time. Instead, the Parties received a mediator's proposal, which the Parties ultimately both agreed to accept.

Second, although this case was in the early stages and no formal discovery had yet occurred, prior to the mediation, the Parties exchanged sufficient payroll and delivery information for Plaintiff's counsel to be able to properly evaluate the case's strengths and weaknesses for settlement purposes. *See In re Jiffy Lube Sec. Sec. Litig.*, 927 F.2d at 159 (approving settlement, holding that although the settlement was reached early in the litigation before formal discovery had occurred, "documents filed by plaintiffs and evidence obtained through informal discovery yielded sufficient" information).

Third, counsel for both Parties are experienced in the specific area of "pizza delivery driver lawsuits," having battled over relevant issues in courts throughout the country. Through those cases, the Parties' counsel have litigated many of the key issues that arise in these disputes, including motions to dismiss, motions for summary judgment, and motions for class and/or collective action certification. Courts in this circuit give substantial weight to the experience of the attorneys who prosecuted and negotiated the class settlement. *In re MicroStrategy*, 148 F. Supp. 2d

at 665 (holding "appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interests of their clients and the class as a whole, and to find that the proposed settlement is fair").[3] As discussed above, the proposed settlement resulted from arm's-length negotiations between counsel well-versed in pizza delivery driver wage and hour law.

Finally, Plaintiff's counsel are well-versed in this area of law and the strengths and weaknesses of the claims at issue. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *6 (S.D. Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The 'pizza delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…"); *see also Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, *5 (S.D. Ohio Jan. 18, 2019) ("Plaintiff's Counsel [Biller & Kimble, LLC], having established an expertise in 'pizza delivery driver' litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here."). In this case, Plaintiff's counsel were able to assess the strengths and weaknesses of the claims, based on the data and information exchanged.

### 4.2. The relative strength of the Parties' positions and complexity of protracted litigation support approval of the Settlement.

The second factor for considering is the relative strength of the Parties' cases, as well as the uncertainties of litigation on the merits, and the existence of difficulties of proof or strong

---

[3] *See also, e.g., In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.*, No. 11 Mn. 02000, 2014 WL 12621614, *4 (D.S.C. Oct. 15, 2014); *Muhammad v. Nat'l City. Mortg., Inc.*, No. 07 Civ. 423, 2008 WL 5377783, *4 (S.D. W. Va. Dec. 19, 2008) (citing Newberg § 11.28); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009).

defenses that the plaintiffs are likely to encounter at trial. Factor three considers the complexity, expense, and likely duration of additional litigation. Both of these factors favor approval.

In evaluating the strength of a case's merits, courts refrain from reaching conclusions on issues that have not been fully litigated. *See S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981)). Because the object of settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (noting that the settlement hearing is not "a trial or a rehearsal of the trial").

Plaintiffs drove personal vehicles to deliver pizzas, and Defendants reimbursed the drivers for the expenses associated with the use of those vehicles. Defendants' data reflects that in most instances, they reimbursed the drivers less than the IRS standard business mileage rate. Aside from those basic facts, however, the Parties vigorously dispute the law as it applies to those facts.

As described above, Plaintiff contends that Defendants must either keep records of and reimburse the drivers' actual expenses or reimburse at the IRS standard business mileage rate. Defendants contend that they may reimburse a "reasonable approximation" of the expenses. The Fourth Circuit has not decided this issue.

Resolution of this issue in Plaintiff's favor would result in approximately $1.8 million in FLSA unpaid wages (unliquidated) across the maximum possible timeframe. Resolution of this issue in Defendants' favor would allow them to argue that the amount they reimbursed was a reasonable approximation, potentially resulting in no liability at all.

Putting aside this fundamental legal dispute, additional factors would play into the potential, recoverable damages. First, the amount at issue assumes that 100% of the putative class

17

joined the case for purposes of bringing an FLSA claim. In reality, only one individual other than the named Plaintiff has joined the case at this point, and FLSA collective actions typically have sub-50% opt in rates.

Second, approximately 72% of the putative class signed arbitration agreements with class action waivers. If those agreements were held to be valid, those individuals would recover nothing from this case and, instead, would be forced to individually arbitrate their claims, provided they wanted to and were able to secure counsel to do so.

Third, it is also significant that this settlement will distribute money to individuals based on the maximum possible statute of limitations *and* allows every putative class member, even those that signed arbitration agreements, an opportunity to receive settlement funds.

Fourth, in addition to Plaintiff's FLSA claims, Plaintiff also brought North Carolina state law claims. These claims would also be subject to legal and procedural challenges from Defendants, including Defendants' anticipated argument that the claims were entirely preempted by the FLSA.

Plaintiff recognizes that Defendants had many ways of potentially reducing any award, even to zero. Thus, this case presented substantial uncertainty, which this settlement eliminates. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Hupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969).

As currently drafted, the Settlement Agreement represents an adequate recovery for the two subclasses described above. When a settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement is reasonable. *Gilliam v. Addicts Rehab. Ctr. Fund.*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, *5 (S.D.N.Y. Mar. 24, 2008) (internal quotation

marks and citations omitted). Finally, those who do not take part in this settlement do not waive their FLSA claims.

This settlement is an excellent outcome resulting from significant negotiations between the Parties and strongly favors approval.

### 4.3. Defendants' solvency was not evaluated in this case.

The Fourth Circuit advises courts to consider a defendant's ability to pay any subsequent judgment and the availability or lack thereof of insurance proceeds. *See Jiffy Lube*, 927 F.2d at 159. Because the settlement is appropriate on the merits of the case and is not reduced to account for any collectability concerns, the Parties did not evaluate Defendants' solvency. Thus, this is a neutral factor. To the extent relevant, Defendants had no insurance that would cover the claims in this case.

### 4.4. Degree of opposition to the Settlement voiced by Class Members can be evaluated at final approval.

The "attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement is a proper consideration for the trial court…" *Flinn*, 528 F.2d at 1173. Once Class Members have been notified of the settlement, the Court will be in a better position to fully analyze this factor after notice issues and Class Members have had an opportunity to opt out or object to the settlement. Thus, this factor is to be determined.

In sum, the terms of the proposed settlement are fair and reasonable, as evidenced by application of the relevant Fourth Circuit factors, which support preliminary approval of the settlement.

### 5. Certification of the Settlement Class is Appropriate.[4]

Plaintiff asks the Court to certify the case as a Rule 23 North Carolina class action and an FLSA collective action for settlement purposes.

To date, every Federal Court to consider a contested Rule 23 class certification motion in a "pizza delivery driver under-reimbursement" case has granted the motion. *See Edwards v. PJ Ops Idaho, LLC*, No. 1:17-cv-00283, 2022 U.S. Dist. LEXIS 102861 (D. Idaho June 7, 2022); *Branning v. Romeo's Pizza, Inc.*, No. 1:19 CV 2092, 2022 U.S. Dist. LEXIS 59262 (N.D. Ohio Mar. 29, 2022); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 11743 (S.D. Ohio Jan. 22, 2021) [hereinafter *Waters I*]; *Brandenburg v. Cousin Vinny's Pizza,* No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 6, 2018); *McFarlin v. The Word Enterprises, LLC*, No. 16-cv-12536, 2017 U.S. Dist. LEXIS 164968 (E.D. Mich. Oct. 5, 2017); *Bass v. PJ COMN Acq. Corp.,* No. 09-cv-01614, 2011 U.S. Dist. LEXIS 58352 (D. Colo. Jun. 1, 2011); *Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-1335, 2013 U.S. Dist. LEXIS 181749 (E.D. Mo. Dec. 31, 2013) [hereinafter *Perrin I*]. The consistent judicial decisions granting class certification in nearly identical circumstances provide compelling support for certification in this case as Plaintiff's case is no different. Here, Plaintiff seeks to certify the following class:

---

[4] Subject to the approval of the Court, and for settlement only, Defendants do not contest whether Plaintiff has satisfied the requirements for class certification pursuant to Rule 23. Further, Defendants have agreed not to contest the statements made in this motion regarding class and collective action certification for purposes of settlement only. Accordingly, any class certification order entered in this Action pursuant to the Settlement Agreement shall not constitute a waiver or admission, in this or in any other proceeding, by Defendants of a finding or evidence that Plaintiffs' claims, the claims of any person in the Settlement Class, or any Released Claims are appropriate for class treatment, or that any requirement for class certification is otherwise satisfied in this Action. Defendants in no way waive their respective rights to challenge Plaintiffs' allegations that a class may be certified in this Action, in the event that the Settlement Agreement does not become effective for any reason. Likewise, except for the Settlement, Defendants in no way waive their right to enforce the arbitration agreement and in the event that the Settlement is not approved Defendants retain such right.

All current and former delivery drivers employed from October 31, 2019, through July 14, 2022, at the Defendants' 21 Domino's Pizza stores owned, operated and/or controlled by Defendants.

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative Parties are typical to the claims or defenses of the class; and

(4) the representative Parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A potential settlement "is a relevant consideration when considering class certification." *Temp Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 08 Civ. 271, 2012 U.S. Dist. LEXIS 131201, *1 (D.S.C. Sept. 14, 2012). "If not a ground for certification *per se*, certainly settlement should be a factor, and an important factor, to be considered when determining certification." *Id.* (citing *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989) (*abrogated by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).

### 5.1. Numerosity

Numerosity requires that the class be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." *Kelley v. Norfolk & W. Ry.*, 584

21

F.2d 34, 35 (4th Cir. 1978). However, the Fourth Circuit has indicated that a class with over 30 members is numerous enough to satisfy this inquiry. *See Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1762 (2d ed. 1986)).

The putative class here consists of thousands of delivery drivers from Defendants' Domino's stores. Accordingly, the settlement class meets Rule 23(a)'s numerosity requirement.

### 5.2. Commonality

Rule 23 (a)(2) requires that the Court find that "there are questions of law or fact common to the class." "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of AM.*, *AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003); *see also Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505 (E.D.N.C. 200) (citing *Holsey v. Armour & Co.*, 743 F.3d 199, 216-217 (4th Cir. 1984).

The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude class certification "if the class members share the same legal theory."). The commonality requirement is met where the defendant engaged in a common course of conduct. *See Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003). The commonality requirement does not, however, mandate complete identity of a plaintiffs' claims with those of the class. *See id.* at 212.

22

Here, Plaintiff alleges that all members of the class are unified by common factual allegations---that all class members were subjected to the same mileage reimbursement and compensation policy. As described above, Plaintiff alleges that the members of the class share a common set of facts and legal questions. Plaintiff maintains that these common issues predominate over any issues affecting only individual class members. *See, e.g.*, *McFarlin*, 2017 U.S. Dist. LEXIS 164968, *3; *Perrin I*, 2013 U.S. Dist. LEXIS 181749, *5 *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, *3.

### 5.3. Typicality

Rule 23(a)(3) requires that the Court find that "the claims or defenses of the representative Parties are typical of the claims or defenses of the class." In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher*, 217 F.R.D. at 212.

In this case, "[b]ecause the claims of the representative Parties are [alleged to be] the same as the claims of the class, the typicality requirement is satisfied." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 339 (4th Cir. 2006). Like the putative class, the named Plaintiff, Carvis Williams, a North Carolina driver, contends that he was subject to Defendants' mileage reimbursement policy. Typicality is met because promoting Plaintiff's interest will "simultaneously tend to advance the interests of absent class members." *Deiter v. Microsoft Corp.*,

23

436 F.3d 461, 466 (4th Cir. 2006). Typicality has been repeatedly found in the pizza delivery driver mileage under-reimbursement context. *See McFarlin*, 2017 U.S. Dist. LEXIS 164968, *4; *Bass*, 2011 WL 2149602, *3; *Brandenburg*, 2018 WL 5800594, *4.

### 5.4. Adequacy of Named Plaintiff and his Counsel

Rule 23(a)(4) requires that "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[T]he class representatives must adequately represent the interests of class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiff understands and has accepted the obligations of class representative, has adequately represented the interests of the putative class, and has retained experienced counsel who have handled numerous wage and hour class actions. Moreover, there is no evidence that Plaintiff has interests that are antagonistic to or at odds with those of putative Class Members. Instead, Plaintiff is alleged to have suffered the same wage and hour violations as the putative class.

Plaintiff's Counsel also met the adequacy requirement of Rule 23(a)(4). *Id.* (collecting cases discussing the expertise of Plaintiff's counsel in pizza delivery driver wage and hour class actions).

### 5.5. Certification is proper under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). For the purposes of settlement, these requirements are met.

### 5.6. Common questions predominate.

The Rule 23(b)(3) predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. The predominance inquiry focuses on the balance between individual and common issues. *Brown v. Nucor Corp.*, 785 F.3d 895, 917-21 (4th Cir. 2015). Common issues of law and fact predominate "where the same evidence would resolve the question of liability for all class members." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 06 Civ. 400, 2009 U.S. Dist. 63574, *20 (E.D.N.C. July 22, 2009); *see Stillmock v. Weis Mkts.*, 385 F. App'x 267, 273 (4th Cir. 2010); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003).

Here, Plaintiff's common contention—that Defendants under-reimbursed delivery drivers for expenses incurred making deliveries on Defendants' behalf—predominate over any issues affecting only individual Class Members. Plaintiff's Complaint alleges no conduct or claims particular to Plaintiff that were not practiced upon every member of the class in the same manner. Importantly, whether a putative class member worked in North Carolina, or another state is of no consequence to this analysis because, as discussed *supra*, there is a strong similarity between the claims raised for all Defendants' delivery drivers. Accordingly, the issues of fact arising from

Defendants' alleged conduct predominate over any individual issues, making class treatment appropriate here. Thus, the predominance inquiry is satisfied.

### 5.7. A class action is a superior mechanism.

Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Courts should consider "whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Stillmock*, 385 F. App'x at 274.

On a request for settlement-only FLSA collective and class certification, the Court need not consider the likely difficulties in managing a class action. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."); *Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 765 (11th Cir. 2017); *In re Outer Banks Power Outage Litig.*, No. 17 Civ. 141, 2018 WL 2050141, *2-5 (E.D.N.C. May 2, 2018).

Here, granting conditional certification of the settlement class is superior to individual adjudication because it will conserve judicial resources and is more efficient for the entire settlement class, particularly those who lack the resources to bring their claims individually. *See Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 65408, *2 (S.D.N.Y. May 9, 2012). Plaintiff and the putative collective and class members have limited financial resources with

which to prosecute individual actions. Employing conditional certification of the FLSA collective and the class will achieve economies of scale for putative collective and class members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications.

### 5.8. Plaintiff's Counsel should be appointed as class counsel.

Biller & Kimble and The Leon Law Firm should be appointed as Class Counsel. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinate in a given case." Fed. R. Civ. P. 23(g).

Plaintiff's Counsel satisfy these criteria. They have done substantial work identifying, investigating, negotiating, and settling Plaintiff's and putative Class Members' claims. Plaintiff's Counsel have substantial experience litigating pizza delivery wage and hour class actions. (*Id.* at ¶¶ 34-39). Further, courts have repeatedly found Plaintiff's Counsel to be adequate class counsel. *See id.*; *see also, e.g., Brandenburg*, 2018 WL 5800594, *4.

### 5.9. The proposed Class Notice and Claim Forms are appropriate.

The Notice and Claim Forms, which are attached hereto as Exhibit 2, comply with due process and Rule 23(c)(2)(B). The Court must determine the best notice practicable under the circumstances, including individual notice to potential class members, and that the notice must concisely and clearly state in plain, easily understood language:

- The nature of the action;
- The definition of the class certified;
- The class claims, issues, or defenses;
- That a class member may enter an appearance through counsel if the member so desired;
- That the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
- The binding effect of a class judgment on class members under Rule 23(c)(3).

Rule 23(c)(2)(B); *Good v. Life Investors Ins. Co. of America*, 672 F.3d 402, 422-423 (6th Cir. 2012).

The Notice and Claim Forms satisfy these requirements. They are written in plain English and are organized and formatted to be as clear as possible. Plaintiff asks that the Court grant Plaintiff's request to send the notice to all delivery drivers by mail and email, as set forth in the Settlement Agreement.

### 5.10. The proposed attorneys' fees, costs, administrative expenses, and service award are reasonable and should be preliminarily approved.

Plaintiff asks that the Court preliminarily approve the fees, expenses, and service award amounts at this time, so these costs and expense can be included in the settlement notice for the settlement class members to be able to review prior to the Final Fairness Hearing. This will permit the settlement class members an opportunity to consider the costs and fees and submit any objections prior to final approval.

### 5.10.1. Attorney's Fees

Plaintiff's Counsel asks the Court to preliminarily approve an award of attorney's fees equal to one-third of the settlement funds allocated to class members—$316,666.67 as well as Plaintiff's counsel's reasonable out of pocket expenses actually incurred. Under the Agreement, this amount is paid out the Maximum Settlement Fund.

The method of calculating fees used here results has been consistently upheld by the Fourth Circuit.[5] Fee awards are typically based on the entire settlement fund, inclusive of fees, expenses, and service awards. *See, e.g., Devine v. City of Hampton, Virginia*, No. 4:14cv81, 2015 U.S. Dist. LEXIS 177155, at *3 (E.D. Va. Dec. 1, 2015) (settlement agreement provided attorney's fees in the amount of approximately 33%); *see also Hatzey v. Divurgent, LLC*, No. 2:18-cv-191, 2018 U.S. Dist. LEXIS 187007, at *4 (E.D. Va. Oct. 9, 2018); *Hoffman v. First Student Inc.*, No. WDQ-06-1882, 2010 U.S. Dist. LEXIS 27329, 2010 U.S. Dist. 27329, at *3 (D.Md. March. 23, 2010).

---

[5] The Fourth Circuit examines the reasonableness of a fee request through a percentage of fund analysis subject to a lodestar cross-check. *See, e.g., Devine v. City of Hampton, Virginia*, No. 4:14cv81, 2015 U.S. Dist. LEXIS 177155, *3 (E.D. Va. Dec. 1, 2015); *Hatzey v. Divurgent, LLC*, No. 2:18-cv-191, 2018 U.S. Dist. LEXIS 187007, *4 (E.D. Va. Oct. 9, 2019) (awarding one-third of settlement fund of $2,450,000); *Hoffman v. First Student Inc.*, No. WDQ-06-1882, 2010 U.S. Dist. LEXIS 27329, *3 (D.Md. March. 23, 2010) ("Under the FLSA and the terms of lead class members' agreement with counsel, Plaintiffs' counsel may recover one-third of the damages award. Because this amount appropriately reflects the time spent and expenses incurred by Plaintiffs' counsel in this litigation, fees and costs are reasonable and appropriate"); *see also DeWitt v. Darlington Cty., S.C.*, No. 11 Civ. 740, 2013 U.S. Dist. LEXIS 172624, *9 (D.S.C. Dec. 6, 2013) (noting that "[o]ne-third of the recovery appears to be a fairly common percentage in contingency cases, especially where the settlement amount is not-so large as to produce a windfall"); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 U.S. Dist. LEXIS 72981, *4 (S.D. W. V. May 23, 2013); *Montague v. Dixie Nat. Life Ins. Co.*, No. 09 Civ. 687, 2011 U.S. Dist. LEXIS 92178, *2-3 (D.S.C. Aug. 17, 2011). If the Court desires, Plaintiff can submit counsel's lodestar at Final Approval. Obviously, counsel will spend more time on the case between now and Final Approval (and after Final Approval as the settlement is administered).

### 5.10.2.    Litigation Expenses

Plaintiff also seeks an award to reimburse counsel for the expenses that counsel advanced on behalf of Plaintiff and the class. These expenses are relatively limited in this case and include the filing fee ($402), service of process fees ($175), and half of the mediator's fee ($10,000), for a total of $10,577 in litigation expenses.

### 5.10.3.    Administrative Costs

The Agreement allocates an additional $20,000 to be paid out of the Settlement Fund for claims administration through a professional third-party administrator. This process involves involve the sending of notice, the processing of claim forms, the sending of checks, and the processing of returned checks. These tasks are necessary to properly administer the settlement and the amount is reasonable for this service.

### 5.10.4.    Service Award

The settlement agreement allocates $10,000 as a service award to Plaintiff Carvis Williams. Named plaintiffs in class and collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"). This is especially true in employment litigation. *See Velez v. Majik Cleaning Servs., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, *7 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

In this case, Plaintiff Williams was involved in every step of the way. Plaintiff attended mediation and ultimately agreed to the settlement terms that are now being presented to the Court on behalf of his co-workers. His fellow Class Members stand to gain tremendously because of his work, dedication, and sacrifice in bringing this lawsuit. "Without incentive awards, the class representatives would not be rewarded for their participation or for the risk of pursing this action with no promise of a successful outcome." *Speaks v. U.S. Tobacco Coop., Inc.*, No. 5:12-cv-729, 2018 U.S. Dist. LEXIS 26597, at *4 (E.D.N.C. Feb. 20, 2018). An incentive award of $10,000 for class representatives is reasonable given their contributions to the case. *See, e.g., Chrismon v. Meadow Greens Pizza,* No. 5:19-cv-155-BO, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) citing numerous other cases approving $10,000 service awards); *Kruger v. Novant Health, Inc.*, No. 1:14cv208, 2016 U.S. Dist. LEXIS 193107, *6 (M.D.N.C. Sept. 29, 2016). Accordingly, Plaintiff's Counsel requests a $10,000 service award for Plaintiff Carvis Williams.

### 5.11. The Court Should Set a Hearing for Final Approval

The Parties request that the Court set a hearing for final approval of the settlement to occur approximately 150 days after the Court grants preliminary approval of the proposed settlement. This date will allow a reasonable period for the class notices to be mailed and for class members to object or opt-out of the settlement but will not unduly delay the case's adjudication. The timeline envisioned for administration is as follows:

| Time | Event |
| --- | --- |
| Within 10 days of preliminary approval | Defendants provide Class Counsel and the Administrator with the Class Data List, as set forth in the Settlement Agreement. |
| Within 15 days after receiving the class list | The Administrator will send the notice to the class members. |
| Up to 60 days after mailing notices | Class members must opt-out or object to the settlement. |

| Within 45 days of the notice period deadline | Plaintiff will draft and file a motion for final approval. |
| Approximately 150 days after preliminary approval | The Court will hold a Final Fairness Hearing |
| Within 28 days of the Court's final approval Order becoming Final | The Claims Administrator will distribute payments to Class Member and Class Counsel |

## 6. Conclusion

For the foregoing reasons, Plaintiff respectfully requests the Court to enter an Order (1) preliminarily approving the proposed settlement; (2) provisionally certifying the settlement class and collective action described in the attached Memorandum of Law and Settlement Agreement; (3) approving the form, content, and distribution of the class notice and claim form; (4) designating Plaintiff Carvis Williams as class representative; (5) preliminarily approving the service award for Plaintiff Williams; (6) appointing Plaintiff's counsel as class counsel and approve Class Counsels' request for attorney's fees and costs and; (7) schedule a formal fairness hearing approximately 150 days after preliminary approval.

Respectfully submitted,

/s/ Laura E. Farmwald
Mary-Ann Leon
N.C. State Bar No. 26476
The Leon Law Firm, P.C.
704 Cromwell Dr., Ste E
Greenville, NC 27858
Telephone: (252) 830-5366
maleon@leonlaw.org
www.leonlaw.org
Local Rule 83.1(d) Counsel

Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
Laura E. Farmwald (By Special Appearance) (Ohio Bar #0095304)

32

Samuel D. Elswick, Jr. (By Special Appearance)
(Ohio Bar # 100327)
8044 Montgomery Road, Suite 515
Cincinnati, Ohio 45236
Telephone: 513-715-8712
Facsimile: 614-340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*selswick@billerkimble.com*

www.billerkimble.com

Counsel for Plaintiffs

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the Memorandum in Support of the Motion for Preliminary Approval contains 8,976 words and is in compliance with the Court's Order granting Plaintiff's Motion to Exceed Word Limit set by Local Rule 7.3(d)(1) and include up to a total of 10,250 words (Doc. 44).

*/s/ Laura E. Farmwald*
Laura E. Farmwald

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon counsel for Defendants through the Court's ECF system.

*/s/ Laura E. Farmwald*
Laura E. Farmwald