IN THE UNITED STATES DISTRICT COURT
for the MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Carvis Williams, *et al.*, | Case No. 1:21-CV-00828 |
| *On behalf of himself and those similarly situated*, | Judge Thomas Schroeder |
| Plaintiff, | |
| v. | |
| GBR Pizza, Inc. d/b/a Domino's, *et al.*, | |
| Defendants. | |

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

Plaintiff Carvis Williams asks the Court to grant final approval of the Settlement and Release Agreement ("Settlement Agreement"), entered into by himself, the FLSA collective, and the Rule 23 class (collectively, "Plaintiffs"), and Defendants GBR Pizza, Inc. and Gerald B. Rhodes (collectively, "Defendants") (Doc. 46-1 and 47-1). The Settlement Agreement was preliminarily approved on November 2, 2022. (Doc. 48). The notice period has concluded, and no class member has objected to or requested exclusion from the settlement. Defendants do not oppose this motion. Accordingly, Plaintiff asks that the Court grant final approval of the proposed settlement and direct the Parties to carry out the remaining terms as set forth in the agreement.

1

The arguments in support of Plaintiff's motion are more fully set forth in the attached memorandum. [1]

Respectfully submitted,

/s/Laura E. Farmwald
Mary-Ann Leon
N.C. State Bar No. 26476
The Leon Law Firm, P.C.
704 Cromwell Dr., Ste E
Greenville, NC 27858
Telephone: (252) 830-5366
*maleon@leonlaw.org*
www.leonlaw.org
Local Rule 83.1(d) Counsel

Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
Laura E. Farmwald (By Special Appearance) (Ohio Bar #0095304)
8044 Montgomery Road, Suite 515
Cincinnati, Ohio 45236
Telephone: 513-715-8712
Facsimile: 614-340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs*

---

[1] While Plaintiff is cognizant of the fact that the proposed order submitted with Plaintiff's Unopposed Motion for Preliminary Approval was not utilized, per the Settlement Agreement, Paragraph 8(F), the Parties have submitted a proposed order for Judge Schroeder's consideration, which is attached hereto as Exhibit 3.

2

## 1. Introduction

On November 2, 2022, this Court entered an Order granting Plaintiff's Unopposed Motion for Preliminary Approval. Doc. 48. The Order preliminarily certified the case as a class action pursuant to Fed. R. Civ. P. 23 and as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) for settlement purposes. *Id*. at 2-3. The Order also preliminarily found that the settlement "appears fundamentally fair, reasonable, adequate, and in the best interest of the Class Members[.]" *Id*. at 4. Finally, the Order approved the content of the Parties' proposed Notice to the Class Members, and approved the schedule for, form of, and method for disseminating the Notice. *Id.*

The Notice process is now complete. Of the 856 pizza delivery drivers who make up the settlement class, 0 class members objected to the settlement, and 0 class members opted out of the Rule 23 class settlement. (Declaration of Jeff Johnson ("Johnson Decl."), attached hereto as Exhibit 1). Under the terms of the settlement, the eligible class members will receive an average award of approximately $954.50, *after* deducting attorneys' fees, litigation costs, administrative costs, and a service award. *Id.*

Plaintiff now asks the Court to grant final approval of the Settlement Agreement (previously filed as Doc. 46-1 and 47-1) as fair, reasonable, and adequate, and enforce the terms set forth therein.

## 2. Background of Lawsuit and Claims

In his Motion for Preliminary Settlement Approval (Doc. 45), Plaintiff detailed the claims asserted in this lawsuit, the course of the litigation, the settlement negotiations and considerations, the scope of the release of claims, and the terms of the settlement. Plaintiff incorporates that Motion herein in its entirety.

While the case settled in its relatively early stages, it was highly contested. Defendants filed a Motion to Dismiss Plaintiff's Complaint to the extent it asserted claims that were released pursuant to a prior settlement of the same claims and to strike Plaintiff's class and collective action allegations. Doc. 13-1. That Motion remained pending at the time the Parties reached the proposed Settlement. *See* Doc. 13, 20, 24, 25. In connection with Defendants' Motion to Dismiss, the Parties briefed the issue of whether Defendants were permitted to file their prior, similar pizza delivery driver under-reimbursement settlement under seal, or whether such a filing violated the Fair Labor Standards Act and Rule 23. Doc. 15, 19, 21.

While Defendants' Motion to Dismiss was pending, Plaintiff sought to commence discovery. Defendants argued that a Rule 26(f) conference was premature until the initial pretrial conference was scheduled, and the Court had ruled on the pending Motion to Dismiss. Doc. 28. Since Defendants would not agree to participate in a Rule 26(f) conference until the initial pretrial conference was scheduled, Plaintiff filed a unilateral Rule 26(f) Report. Doc. 27. Thereafter, the Parties filed briefs on the issue of whether Defendants were obligated to participate in a Rule 26(f) conference and in discovery while their Motion to Partially Dismiss was pending. Doc. 28, 31.

Thereafter, Plaintiff served his initial discovery requests and Defendants filed a Motion to Stay or for Protective Order. Defendants asked the Court to stay discovery or enter a protective order because the parties had not yet held a Rule 26(f) Conference, the Court had not held an initial

pretrial conference or entered an initial pretrial Order, and because the Court had not yet ruled on their Motion to Dismiss. Doc. 34.

Before Plaintiff filed his Response in Opposition to Defendants' Motion to Stay or for Protective Order, the Parties agreed to a stay, to a substantial exchange of informal discovery for settlement purposes, and to attend mediation. Doc. 35, 36. That mediation resulted in the Settlement Agreement now pending approval of this Court.

Plaintiff's Complaint alleges that that Defendants, operators of a Domino's franchise, required their minimum wage delivery drivers to provide their own vehicles to deliver the Defendants' pizza and other food and drinks, and failed to adequately reimburse the drivers for their vehicle expenses. Plaintiff claims that the drivers' cars are "tools of the trade," 29 CFR § 531.35, and that the Defendants' failure to adequately reimburse for the drivers' vehicle expenses triggered a minimum wage violation. *See, e.g., Waters v. Pizza to You, LLC*, 538 F.Supp.3d 785 (S.D. Ohio 2021); *contra Bradford v. Team Pizza, Inc.*, 568 F. Supp. 3d 877, 879 (S.D. Ohio 2021) (citing 29 C.F.R. § 778.217). Plaintiff alleges that this practice also violates the North Carolina Wage and Hour Act (N.C. Gen. Stat. §§ 95-25.6 and 95-25.8). Defendants denied, and continue to deny, Plaintiff's allegations and any liability.

### 3. Summary of Settlement Terms

The Parties settlement resolves the claims asserted in the lawsuit on behalf of the "Settlement Class," which is defined in the Settlement Agreement as:

> All current and former Delivery Drivers employed by GBR Pizza, Inc. at its Domino's Pizza stores from October 31, 2019, through July 14, 2022.

Doc. 46-1 § 1.B.

The Settlement Agreement creates a fund of $950,000, inclusive of payments to class members, attorneys' fees, expenses, and service awards. Doc. 46-1, 47-1. The Agreement contemplates that attorney's fees and costs, a service award, and settlement administration fees will be deducted from the Settlement fund. The "Net Settlement Fund" will then be distributed to the Settlement Class as follows: twenty-eight percent (28%) of the Net Settlement Fund is to be allocated for payments to drivers who did not sign arbitration agreements ("Group 1 Drivers") on a pro rata basis, based on the number of miles they drove for Defendants during the relevant time period; and the remaining seventy-two percent (72%) of the Net Settlement Fund is to be allocated for payments to drivers who signed arbitration agreements ("Group 2 Drivers") on a pro rata basis, based on the number of miles they drove for Defendants during the relevant time period. The Parties' settlement agreement is an "opt out" settlement for the individuals who did not sign arbitration agreements and an "opt in" settlement for those individuals who signed arbitration agreements containing class and collective action waivers. In other words, those who did not sign an arbitration agreement will share in the settlement fund without having to take any action, and those who signed arbitration agreements were required to fill out a claim form during the notice period to receive their share of the Net Settlement Fund. *See* Doc. 46-1, § 4.D.iii. The Notice explained the class members options in detail.

While all class members who do not opt out of the settlement will release their North Carolina Wage and Hour Act claims, only those who participate in the settlement and receive a share of the Net Settlement Fund will release their FLSA claims. As such, those individuals who signed arbitration agreements but do not join the case are still able to pursue their claims elsewhere, assuming they are still within the applicable statute of limitations. Defendants reimbursed delivery

drivers at approximately $.32 per mile on average during the relevant period. If damages are calculated at the IRS standard business mileage rate (a prospect Defendants contest), Plaintiff estimates that the class members have suffered approximately $1.8 million in unpaid wages during the settlement class period. Pursuant to the settlement agreement, after deducting attorneys' fees and expenses, the drivers will receive approximately $.08 per mile to resolve their claims.

Considering the length of time it would take to reach a judgment, the hotly contested issues that could reduce the drivers' damages (potentially to zero), and the procedural hurdles to maintaining this case as a class and/or collective action, this is an excellent result for the class.

### 4. The Notice Process

On November 2, 2022, the Court approved the Parties' proposed Notice and Notice process. Doc. 48. As the Court explained, "the Notice, including the email and the letter, [was] clearly designed to advise the Class Members of their rights." *Id*. at 5. The parties have completed the Notice and Claim process, and now seek final approval of the settlement.

Notice of Settlement was mailed to the 856 class members on November 17, 2023. (Johnson Decl., at ¶¶7-10). During the notice period, notices that were returned in the mail as undeliverable were traced in an to attempt to locate a new address for the class member. (*Id*. at ¶¶ 9-10). In total, 96.37% of the class received at least one form of Notice of the proposed Settlement. (*Id*. at ¶¶7,10). This rate of notice is "an excellent result and reflects well on the notice process used in this case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *9 (S.D. Ohio Nov. 25, 2019).

On January 16, 2023, the notice period concluded. (*Id.* at ¶12). No class member has requested exclusion from the proposed settlement. (*Id.* at ¶ 13). No class member has objected to the proposed settlement. (*Id.* at ¶ 14).

Approximately twenty-nine percent (29%) of the 750 potential Group 2 Settlement Class members chose to participate in the settlement. (*Id.* at ¶ 11). Those Group 2 Class Members who chose not to participate in the case have released claims under North Carolina wage and hour law, but retain their FLSA claims, which means if they choose to pursue an arbitration in the future and they prevailed, they would still be able to recover the unpaid wages and liquidated damages (to the extent they have not expired) that they could receive under the North Carolina Wage and Hour Act.[2] Even for those who chose not to participate in the case, the Notice provided them with a notable benefit—they were informed of the claims asserted here. Given the current state of the law in FLSA collective actions, there was a possibility that those individuals never would have been so informed, but for this settlement. *See, e.g., Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1046-47 (7th Cir. 2020) (denying FLSA conditional certification as to include individuals who defendants claimed had signed arbitration agreements); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019) (same).

### 4. Standard for Settlement Approval

The Court held in its Order granting preliminary approval that the Parties' proposed settlement "appears fundamentally fair, reasonable, adequate, and in the best interest of the Class Members[.]." Doc. 48, p. 4. Now that the Notice period is over, Plaintiff will address once more

---

[2] The North Carolina Wage and Hour Act provides the same liquidated damages (1x unpaid wages) as the FLSA, but carries a statute of limitations of only two years, whereas the FLSA provides a 2- or 3-year statute of limitations.

the various factors courts consider when evaluated Rule 23 and FLSA collective action settlements.

"To approve a settlement under the FLSA, the court must determine whether it is a fair and reasonable compromise of disputed claims and issues arising from a bona fide dispute raised pursuant to the act." *Ford v. Cardinal Innovations Healthcare Solutions*, M.D.N.C. No. 1:20-cv-736, 2022 U.S. Dist. LEXIS 35052, at *1 (M.D.N.C. Jan. 21, 2022) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007), superseded on other grounds as recognized by *Whiting v. The Johns Hopkins Hosp.*, 416 F. App'x 312, 316 (4th Cir. 2011)). "Under § 216(b) of the act, when an action is brought by an employee against her employer to recover back wages, the proposed settlement must be presented to the district court for review and determination that the settlement is fair and reasonable." *Id.* (citations omitted).

The Fourth Circuit has held that "[u]nder the FLSA, 'there is a judicial prohibition against the unsupervised waiver or settlement of claims.'" *Taylor*, 493 F.3d at 460 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-16, 66 S. Ct. 925, 90 L. Ed. 1114 (1946)). "Employees cannot waive their right to [minimum wages under the FLSA] unless such a settlement is overseen by the Department of Labor or approved for fairness and reasonableness by a district court." *Ford*, 2022 U.S. Dist. LEXIS 35052, at *2 (citations omitted). "Thus, courts must determine that an FLSA settlement between an employee and an employer represents a fair and reasonable resolution of a bona fide dispute over FLSA provisions before approving the settlement." *Id.* (citations omitted).

With respect to a class settlement, preliminary approval is the first step in the two-step settlement process. *See Horton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 855 F. Supp. 825,

827 (E.D.N.C. 1994). Preliminary approval allows the notice to be distributed to putative class members and for those class members to object to or opt out of the settlement. "Ultimately, approval of a class action settlement is committed to the sound discretion of district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re Microstrategy, Inc., Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001) (quoting *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986)) (internal quotations omitted). Courts assess a proposed class settlement to determine whether, as a whole, it is fair, reasonable, and adequate to class members. Fed. R. Civ. P. 23(e)(2).

The Fourth Circuit has advised courts to evaluate the following factors in determining whether to approve a class action settlement: (1) whether the settlement was the product of good faith bargaining, at arm's length, and without collusion; (2) the relative strength of the Parties' cases as well as the uncertainties of litigation on the merits and the existence of any difficulties of proof or strong defenses likely to be encountered if the case goes to trial; (3) the complexity, expense, and likely duration of additional litigation; (4) the solvency of defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement by class members. *Cantu-Guerrero v. Lumber Liquidators, Inc.*, 952 F.3d 471, 484 (4th Cir. 2020); *In re Jiffy Lube Sec. Litig.*, 927 F.3d at 159; *1988 Trust for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). These factors support approval here.

Because the standard for FLSA approval and Rule 23 approval are similar and often overlapping, Plaintiff will address them together. *See, e.g., Ford*, 2022 U.S. Dist. LEXIS 35052, at *3 (analyzing the fairness and reasonableness of an FLSA collective action settlement by reference to considerations for the Rule 23 settlements).

### 4.1. The Settlement is the product of good faith bargaining, at arm's length, and without collusion.

In its Order granting preliminary approval, the Court found that the settlement "was the product of good-faith bargaining during extensive, arm's-length negotiations between experienced counsel." Doc. 48, p. 4. The Parties are represented by counsel experienced in pizza delivery litigation. As discussed above, from the outset, the case was hotly contested, but the Parties ultimately agreed to stay the case, exchange relevant information, and pursue settlement. This factor weighs in favor of approving the settlement.

### 4.2. The relative strength of the claims and defenses.

The Court's preliminary approval Order found that the settlement was fair, reasonable, and adequate in light of the strength and weaknesses on the merits of the Plaintiff's case. Doc. 48, p. 4. This factor weighs in favor of approval.

This case presents a legal question that has not been addressed by the Fourth Circuit or any district court within the Fourth Circuit: how to value, for purposes of determining minimum wage compliance, the vehicle expenses incurred by minimum wage delivery drivers using their personal vehicles in the course of their employment.

Both Parties' counsel have been litigating this issue in courts across the country for years. Plaintiff contends that, because Defendants did not collect and maintain records of the drivers' actual vehicle expenses, Defendants were required to reimburse at the IRS standard business mileage rate. *See, e.g.,* Department of Labor Field Operations Handbook, 30c15; *Waters*, 538 F.Supp.3d 785; Hatmaker v. PJ Ohio, LLC, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790, 2019 WL 5725043 (S.D. Ohio Nov. 5, 2019); *Parker v. Battle Creek Pizza, Inc.*, 600 F. Supp. 3d 809, 814 (W.D.Mich.2022), *petition for appeal granted by In re Battle Creek Pizza, Inc.*, 2022 U.S. App. LEXIS

34523 (Dec. 14, 2022). Defendants, on the other hand, argue that employers are permitted to meet their minimum wage obligation as long as they "reasonably approximate" the drivers' vehicle expenses. *See* DOL Opinion Letter, FLSA2020-12; *Kennedy v. Mountainside Pizza, Inc.*, 2020 U.S. Dist. LEXIS 154792, 2020 WL 5076756 (D. Colo., Aug. 26, 2020); *Blose v. JARINC, Ltd.*, 2020 U.S. Dist. LEXIS 167131 (D. Colo. Sept. 14, 2020); *Bradford v. Team Pizza, Inc.*, 568 F. Supp. 3d 877, 879 (S.D. Ohio 2021), *petition for appeal granted by In re Bradford*, 2022 U.S. App. LEXIS 17739 (6th Cir., June 27, 2022).

No Circuit Court has addressed this question. As of March 27, 2023, the same counsel that represent the parties in this case have fully briefed an appeal of this issue to the Sixth Circuit. *See In re Bradford*, No. 22-0304 (6th Cir.).

In this case, if this issue was decided in Plaintiff's favor, the calculation of damages would be a relatively straightforward math equation, though the Parties would likely litigate vigorously over other issues, including whether class and/or collective action certification is appropriate, whether liquidated damages should be awarded, and whether the 2- or 3-year statute of limitations under the FLSA applied. If the issue was decided in Defendants' favor, the case would become a fact-intensive battle of experts, requiring extensive discovery and likely a trial. The uncertainty presented by the primary legal question in the case favors approval of the Parties' proposed settlement.

Further, as Plaintiff detailed in his Motion for Preliminary Approval, there are a number of other factors that could have reduced the total possible outcome to the class, which the proposed settlement addresses in a way that is favorable to the class.

First, employees must opt in to FLSA collective actions, and, typically, only 15-20% of the eligible workers join contested FLSA actions. *See*, Declaration of Laura Farmwald ("Farmwald Decl."), ¶7.[3] Pursuant to the settlement agreement, all of the individuals who do not have arbitration agreements will be paid a share of the settlement, and the approximately 29% of the Group 2 Class Members who submitted claim forms will be paid a share of the settlement. *See* Johnson Decl., ¶11. Those who signed arbitration agreements with class action waivers were presented with an opportunity to join the case and share in the settlement.

Second, the FLSA provides a statute of limitations period of 2- or 3-years, depending on whether Plaintiff was able to prove willfulness. 29 USC § 255. And, notably, an FLSA opt-in plaintiff's statute of limitations continues to run until they file their consent to join form with the court. 29 USC § 257. But for the Parties' settlement, and considering the Parties' dispute regarding the commencement of discovery, even if the Court granted Plaintiff's motion to send notice to the class (which Defendants would have opposed), it is likely that Plaintiff's similarly situated co-workers would not have received FLSA collective action notice for many months, if not years, after the date the settlement was reached (July 22, 2022). During this time, drivers' FLSA claims would have eroded or expired.

The Parties' Settlement Agreement resolves this issue in the best possible way for the class members: they can recover for the maximum possible statute of limitations period, back to October 31, 2019 (*i.e.*, the first date following the release period of Defendants' previous settlement of similar claims). As a result, even though Group 2 Class Members returned settlement claim forms

---

[3] The Declaration of Laura Farmwald is attached hereto as Exhibit 2.

in late 2022 and early 2023, they will recover for work performed dating back 3+ years, to October 31, 2019.

Third, Defendants would defend against class and collective action certification in this case on the grounds that nearly three-quarters of their delivery drivers have signed arbitration agreements containing class and collective action waivers as a condition of their employment. Two Circuit Courts have ruled that individuals who have signed arbitration agreements should not even receive notice of an FLSA collective action. *See Bigger*, 947 F.3d 1043, 1046-47; *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502-03. As a result, most of Defendants' drivers could well have been excluded from this case altogether, but for the Parties' settlement agreement. As it stands, those who signed arbitration agreements were informed of this settlement, were given an opportunity to participate, and were able to recover for a lookback period that was longer than they otherwise would have been even if they were presented with FLSA collective action notice in the ordinary course of contested litigation.

Fourth, in addition to Plaintiff's FLSA claims, Plaintiff also brought North Carolina state law claims. Those claims carry a two-year statute of limitations dating back from the filing of the class action complaint, with no possibility for a third year. These claims would also be subject to legal and procedural challenges from Defendants, including Defendants' anticipated argument that the claims were entirely preempted by the FLSA.

Finally, only those class members who cash their checks will release their FLSA claims. Since the Plaintiff's theory is that the North Carolina Wage and Hour Act claims "rise and fall" with the FLSA claims, *Craig v. Bridges Bros.*, 823 F.3d 382, n. 1 (6th Cir. 2016), this is a notable benefit to the non-participating class members. To the extent their claims have not expired because

14

of the passing statute of limitations, these individuals are free to pursue essentially the same claims settled here through arbitration.

This case presents a number of uncertainties for both sides, which supports approval of the settlement. "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Hupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969).

### 4.3. The complexity, expense, and likely duration of additional litigation.

The Court's preliminary approval Order found the proposed settlement to be fair, adequate, and reasonable in light of the complexity, expense, and probable duration of further litigation. Doc. 48, p. 4. If this case were contested, it would take years to litigate. For example, Plaintiff's counsel currently has two pizza delivery driver under-reimbursement cases that have been pending since 2017, and neither have a trial date set. *See Edwards v. PJ Ops Idaho, LLC*, No. 1:17-cv-283 (D. Id.) (FLSA collective action and Rule 23 class certification has been granted); *Thomas v. Papa John's International, Inc.,* No. 1:17-cv-411 (S.D.Ohio) (FLSA collective action certification has been granted and plaintiff's motion for Rule 23 class certification is pending). But for the Parties' settlement, this case could well follow a similar path, and would likely require tens of thousands of dollars, or more, in expenses to litigate.

### 4.4. The solvency of defendants and the likelihood of recovery of a litigated judgment.

Defendants' solvency was not evaluated as part of this case because it was settled for an amount that is sufficient based on the merits of the claims and defenses. But, it is worth noting that the nature of the pizza business is that franchisees like Defendants operate on thin margins. Because the FLSA and North Carolina Wage and Hour Act are fee-shifting statutes, the amount of a potential judgment in the event Plaintiff prevailed would only increase if the case continued.

### 4.5. The degree of opposition to the settlement by class members.

Now that the Notice period has closed, the Court can evaluate the settlement based on the reaction of the class members. None of the class members have requested exclusion from or objected to the settlement. This factor weighs in favor of approval.

### 4.6. Other factors considered by this and other courts.

In its Order granting preliminary approval, and in other cases, the Court has noted other related factors that it considered when evaluating the settlement. *See* Doc. 48, p. 4; *Ford*, 2022 U.S. Dist. LEXIS 35052, at *3. Those factors also support approval.

*The extent of discovery that has taken place/the stage of the proceedings*. As discussed above, this case settled at a relatively early stage. However, all of the discovery that was necessary to evaluate damages, and the strengths and weaknesses of the Parties' primary arguments, was exchanged in advance of mediation. Defendants provided Plaintiff with data relating to the wages paid to each putative class member, the miles driven by each putative class member, and the reimbursements paid by each putative class members. Defendants also provided records indicating who had signed arbitration agreements. In under-reimbursement delivery driver cases, discovery focuses "mainly on the records Defendants are required to keep under the FLSA and Ohio law." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2020 U.S. Dist. LEXIS 39715, 2020 WL 1129325, at *3 (S.D. Ohio Mar. 6, 2020); *but see Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1149-1153 (holding that employers do not violate recordkeeping requirements by failing to track or maintain records of employee's actual expenses). This exchange was sufficient to allow the Parties to negotiate an arm's length settlement at mediation, with the assistance of an experienced mediator. *See, e.g., Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *7 (S.D. Ohio Jan.

16

17, 2019) (finding after a similar data exchange that "this exchange of information is sufficient to inform settlement negotiations by experienced counsel").

*The benefits to the Class Members/the amount of the settlement in relation to the potential recovery.* As discussed above, those class members who cash their checks will receive, after deducting for attorneys' fees and costs, an additional $.08 per mile driven on average. The settlement also allows for the maximum possible statute of limitations, despite the reality that the FLSA statute of limitations would typically continue to run until a plaintiff files their consent to join form. Finally, the settlement treats favorably those class members who might have been excluded because they signed arbitration agreements. Given the uncertainties regarding what legal standard would apply to the case, the various procedural and other legal hurdles Plaintiff would have to overcome to achieve maximum damages, and the likely length, expense, and uncertainty of contested litigation, this is an excellent result.

*The opinion of counsel.* As noted above, both sides are represented by attorneys who are very experienced in pizza delivery driver litigation and have a deep understanding of the various risks attendant to these cases. Plaintiff's counsel believes this settlement is an excellent result for the class members.

In sum, the factors used to evaluate class and collective action settlements favor approval of the Parties' proposed settlement in this case. Plaintiff requests that the Court grant final approval of the settlement.

**5. Certification of the Settlement Class is appropriate.**

Plaintiff explained in detail why Rule 23 class certification is appropriate in his Motion for Preliminary Approval and incorporates those arguments herein. *See* Doc. 45, pp. 20-28. In its

Order granting preliminary approval, this Court agreed that the proposed class contemplated by the parties' settlement agreement met the requirements for class certification under Rule 23. Doc. 48, ¶¶ 2-3. Since then, notice of the settlement has been disseminated to the class, and none of the class members have requested exclusion from or objected to the settlement. It is appropriate for the Court to grant final certification of the Settlement Class. Similarly, and for the reasons set forth in Plaintiff's Motion for Preliminary Approval, it is appropriate for the Court to certify this case as a collective action under Section 216(b) of the FLSA.

### 6. **The payment of attorneys' fees is reasonable.**

Plaintiff's Counsel applies for one-third of the settlement fund, or $316,666.67, and reimbursement of reasonable out of pocket expenses they have incurred in the amount of $13,464.70. Defendants do not oppose this request. This fee award is in line with awards in the Fourth Circuit and should be approved.

There are two primary methods for calculating attorneys' fees in class actions in the Fourth Circuit: the percentage of the fund method, and the lodestar method. *Ford*, 2022 U.S. Dist. LEXIS 35052, at *6 (citations omitted). "The percentage of fund method provides that the court award attorneys' fees as a percentage of the common fund," while "the lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund, then to multiply that figure by a reasonable hourly rate." *Id*. at 6-7. Here, the settlement agreement contemplates attorneys' fees as one-third of the fund, subject to the Court's approval.

The percentage method is reasonable in this case. Plaintiff's counsel was able to bring about a positive result for the class through aggressive and efficient advocacy. Plaintiff aggressively sought to get discovery started, which Defendants opposed. The parties ultimately agreed to

exchange, for settlement purposes, information sufficient for Plaintiff's counsel to evaluate the case. The parties attended mediation and reached a settlement that promptly pays substantial money to the class members for their claims, narrowly defines the release, limits the release of FLSA claims to those who actually cash their checks, and accounts for the existence of arbitration agreements in a way that still allows those who have signed them to participate in the case, if they so choose. Plaintiff's counsel relied on their substantial experience in other pizza delivery driver under-reimbursement cases to efficiently evaluate the claims, defenses, and Defendants' data. "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 762 (S.D. Ohio 2007). "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.*[4]

"The requested 33.33 percent award is within the general range of percentages that have been approved in other cases in this circuit." *Ford*, 2022 U.S. Dist. LEXIS 35052, at *8; *see also, e.g., Devine v. City of Hampton, Virginia*, No. 4:14-cv-81, 2015 U.S. Dist. LEXIS 177155 at *3 (E.D. Va. Dec. 1, 2015) (settlement agreement provided attorney's fees in the amount of approximately 33% of the settlement fund); *Hatzey v. Divurgent, LLC*, No. 2:18-cv-191, 2018 U.S. Dist. LEXIS 187007 at *4 (E.D. Va. Oct. 9, 2019) (awarding one-third of settlement fund of $2,450,000;

---

[4] In some wage and hour cases, the lodestar method is more appropriate. Those situations usually involve a plaintiff or a class of plaintiffs whose damages are relatively small, but they have suffered damages nonetheless. In such a circumstance, counsel is often required to expend substantial attorney time—sometimes accruing fees many times greater than the value of the case—in order to help workers recover their wages. It is essential to the proper functioning of the FLSA and associated state laws that lawyers who undertake these cases be compensated for these important efforts. This is the type of "compelling circumstance" that augers in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *n. 1 (S.D. Ohio Nov. 5, 2020); *see also, e.g., Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir.2021) (reversing and remanding fee award limited to a percentage of recovery in wage case).

*DeWitt v. Darlington Cty., S.C.,* No. 11 Civ. 740, 2013 U.S. Dist. LEXIS 172624, at *9 (D.S.C. Dec. 6, 2013) (noting that "[o]ne-third of the recovery appears to be a fairly common percentage in contingency cases, especially where the settlement amount is not-so large as to produce a windfall"); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (upholding attorneys' fee award of one third of $3,050,000 settlement fund); *Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 U.S. Dist. LEXIS 72981, at *6 (S.D.W. Va. May 23, 2013) (awarding one third of settlement amount as attorneys' fee award); *Montague v. Dixie Nat. Life Ins. Co.*, No. 09 Civ. 687, 2011 U.S. Dist. LEXIS 91451, at *2-3 (D.S.C. Aug. 16, 2011) (finding 33% attorneys' fee award reasonable).

"To determine whether the fees sought under the percentage of the fund method are reasonable, the lodestar may be used as a cross-check, as well as the twelve factors from *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)." *Ford*, 2022 U.S. Dist. LEXIS 35052, at *7. The Fourth Circuit considers twelve factors in judging the reasonableness of an award of attorneys' fees in FLSA cases:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at n.28.

*(1) The time and labor expended.* Here, Plaintiff's counsel has expended 345.99 hours on the case. *See,* Farmwald Decl., ¶10. "In addition to the hours worked directly on this case, Plaintiff's

20

counsel, having established an expertise in 'pizza delivery driver' litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. Southern Ohio Pizza, Inc.,* No. 1:17-cv-426, 2019 WL 275711, *5 (S.D. Ohio Jan. 18, 2019) (discussing the attorneys at Biller & Kimble's hours spent on similar pizza delivery driver cases).

Plaintiff's counsel's work on the case is not done. Their hours do not include the time Plaintiff's counsel will spend preparing for, travelling to, and attending the final approval hearing, or the inevitable time they spend responding to inquiries from class members during the settlement administration process. *See, e.g., Arp*, 2020 U.S. Dist. LEXIS 207512, *19 ("The Court is aware that Class Counsel's work does not end at final approval. Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters.").

*(2) The novelty and difficulty of the questions raised; (3) The skill required to properly perform the legal services rendered; (9) The experience, reputation and ability of the attorney.* The questions raised in this case are novel and complex. As discussed above, this case involves a legal question regarding how to value vehicle expenses that is unsettled. Plaintiff's counsel's substantial experience and skill in this complex area has enhanced their representation of the class in this case. Plaintiff's counsel has litigated "pizza delivery driver cases all around the country with success, and has been counsel in a number of 'landmark' decisions in this area." *Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-7825, 2020 WL 969616, *5 (N.D. Ill. Feb. 27, 2020); *see also Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *21 (S.D. Ohio May 17, 2021) ("The Court agrees that Biller & Kimble, LLC have proven themselves to be highly skilled advocates for

pizza delivery drivers and other workers."). Specifically, Plaintiff's counsel is the only firm in the country that has successfully convinced a district court to hold that employers who do not maintain records are required as a matter of law to reimburse at the IRS standard business mileage rate. *See Waters*, 538 F.Supp.3d 785; *Hatmaker* 2019 U.S. Dist. LEXIS 191790; *Parker,* 600 F. Supp. 3d 809, 814. This experience allowed Plaintiff's counsel to negotiate a positive result for the class.

(8) *The amount in controversy and the results obtained*. As discussed above, this settlement is a good result for the class, especially considering the legal and procedural uncertainties with proceeding to a judgment. As it stands, the Settlement amount constitutes approximately 53% of the total alleged unpaid wages for all potential Settlement Class members. *See* Farmwald Decl. at ¶5. This is a tremendous result. *See, e.g., Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing Inc.*, 2010 U.S. Dist. LEXIS 20446, *20 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average.").[5]

---

[5] While not all of the settlement fund was claimed in this case, it is reasonable to base attorneys' fees in common fund settlements on the entire fund created, not on the amount claimed, because "[t]he members of the class, whether or not they assert their rights, are at least equitable owners of their respective shares in the recovery." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 481-82 (1980); *see also, e.g., Myers v. Loomis Armored US, LLC*, No. 3:18-cv-00532-FDW-DSC, 2020 U.S. Dist. LEXIS 62941, at *16 (W.D.N.C. Apr. 8, 2020) ("In applying the common fund method, the Supreme Court and Circuit Courts across the country have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendant.").

*(5) The customary fee for like work; (12) Attorneys' fees awards in similar cases.* As noted above, courts in this Circuit and around the country often approve attorneys' fees of one-third of the common fund in class and/or collective actions. Second, Defendants have previously settled these same claims in a prior case, where a different firm served as plaintiff's counsel. *See* Doc. 16-1 (sealed settlement agreement from prior similar case involving different Plaintiff's counsel). Counsel in that case received one-third of the settlement fund. Notably, that case settled for less money per mile, and under less favorable terms for the class. Specifically, it required all delivery drivers to affirmatively file a claim form to participate whether they signed an arbitration agreement or not, it set a cap on the amount Defendants would have to pay out if the opt in rate was higher than a certain percentage, and it defined the class in a way that was less favorable to the class for statute of limitations purposes. *Id.*

Finally, Plaintiff's counsel has requested and been approved for one-third of the settlement fund in a number of similar pizza delivery cases. *See, e.g., Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021); *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, 2020 WL 6498956, at *7 (S.D. Ohio, Nov. 5, 2020).

*(4) The attorney's opportunity costs in pressing the instant litigation; (6) The attorney's expectations at the outset of the litigation; (7) The time limitations imposed by the client or circumstances; (10) The undesirability of the case within the legal community in which the suit arose; (11) The nature and length of the professional relationship between attorney and client.* Plaintiff believes these factors are neutral and therefore favor approval of the requested fee. Plaintiff's counsel did press this litigation as aggressively as they could have. Since the case is fee-shifting, Plaintiff's counsel could

have incurred substantially more in fees than they will receive here, but settled because it was in the class's interest. Plaintiff's counsel's expectations at the outset of the case was that they would be paid a reasonable fee for their work, subject to Court approval. But, like in all of Plaintiff's counsel's cases, the settlement is not contingent on the Court granting their request for fees. *See* Doc. 45-1, Section 5.B. There were no unique time limitations imposed by this case. The case is not undesirable in the legal community. And, finally, Plaintiff's counsel's relationship with the client is limited to this case. These factors are neutral at worst, and do not suggest that Plaintiff's counsel's requested fee is unreasonable.

Finally, an analysis of the lodestar cross-check further supports the fee request. Plaintiff's counsel has incurred $140,247.02 in attorney's fees in this case based on 345.99 hours worked. *See,* Farmwald Decl., ¶¶ 10-13.

Plaintiff's counsel's rates are reasonable and have been approved in a number of similar pizza delivery driver under-reimbursement cases. *See, e.g., McGrothers v. GT Pizza, Inc.*, No. 2:20-cv-4050, 2022 U.S. Dist. LEXIS 228270, at *16 (S.D. Ohio Nov. 9, 2022) ("This Court previously — and repeatedly — has determined that their hourly rates are reasonable considering their experience, skill, and areas and level of expertise in the area of pizza delivery driver litigation."); *see also, e.g., Clark v. Pizza Baker, Inc. et al*., No. 2:18-CV-157, 2022 U.S. Dist. LEXIS 198354, 2022 WL 16554651, at *6 (S.D. Ohio Oct. 31, 2022); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084, 2022 WL 3048376, at *5, 13-14 (S.D. Ohio Aug. 2, 2022); *McConnell v. EUBA Corp*., 2021 U.S. Dist. LEXIS 92836, 2021 WL 1966062, at *19; *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19. Furthermore, Plaintiff's counsel's rates are within the range of similarly experienced wage and hour attorneys in North Carolina. *See, Ford*, 2022 U.S. Dist. LEXIS

35052, at *12 (noting typical rates for similarly experienced wage and hour attorneys range from $400-$600 or more per hour).

Courts in the Fourth Circuit hold "that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee." *Ford*, 2022 U.S. Dist. LEXIS 35052, at *12-13, citing, *Phillips v. Triad Guar., Inc.*, No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *25 (M.D.N.C. May 9, 2016)(listing cases). Here, Class Counsel's request for 1/3 of the Settlement Amount represents a lodestar multiplier of 2.26, which is within the well-established range of reasonable lodestar multipliers accepted within the Fourth Circuit.[6]

Based on the foregoing, Plaintiff's Counsel's requested attorneys' fees are reasonable and should be approved.

### 7. The payment of advanced litigation costs and settlement administration costs is reasonable.

The Settlement Agreement provides for reimbursement of advanced litigation costs and payment of settlement administration costs from the Settlement Fund.

---

[6] *See also*, *Arp*, 2020 U.S. Dist. LEXIS 207512, *19 (approving lodestar multiplier of 5.6 in FLSA class settlement); *In re Cardinal Health Inc. Sec. Litigs.,* 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (approval of lodestar multiplier of six); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (finding fee award equivalent to 4.5 to 8.5 lodestar multiplier "unquestionably reasonable"); *In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (lodestar multiplier on the fee ultimately awarded was 6.96); *In re RJR Nabisco,* 1992 U.S. Dist. LEXIS 12702, 1992 WL 210138, at *5-6 (S.D.N.Y. Aug. 24, 1992) (approving lodestar multiplier of 6)*; Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (fee represented a lodestar approval of lodestar multiplier of six); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200 (S.D.N.Y. 1997) (approval of lodestar multiplier of 5.5); *In re Charter Communications, Inc., Sec. Litig., No. MDL 1506,* 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (approval of lodestar multiplier of 5.61); *In re Aremissoft Corp. Sec. Litig.,* 210 F.R.D. 109, 134-35 (D.N.J. 2002) (approval of a lodestar multiplier of 4.3); *In re Cendant Corp. Prides Litig.,* 51 F. Supp. 2d 537 (D.N.J. 1999), *vacated and remanded,* 243 F.3d 722 (3d Cir. 2001), *on remand,* No. 98-2819 (D.N.J. June 11, 2002) (approving percentage fee that resulted in a multiplier of 5.28); *Di Giacomo v. Plains All Am. Pipeline,* No. Civ.A.H-99-4137, Civ.A.H-99-4212, 2001 U.S. Dist. LEXIS 25532, 2001 WL 34633373, at *10-11 (S.D. Fla. Dec. 19, 2001) (approving percentage fee that resulted in multiplier of 5.3).

Plaintiff's Counsel's litigation costs are $13,464.70. These costs primarily went toward the filing fee, Plaintiff's share of the mediation costs, and travel expenses. *See*, Farmwald Decl. at ¶16. These costs were reasonable and should be approved. *See Reynolds v. Fid. Invs. Institutional Operations Co.*, No. 1:18-CV-423, 2020 U.S. Dist. LEXIS 2718, at *13 (M.D.N.C. Jan. 7, 2020) (finding an award of $33,931.42 in litigation expenses to be paid from the settlement fund was fair and reasonable where the expenses included mailing costs, online legal research, long-distance telephone use, expert and mediator fees, travel expenses for mediation and court proceedings, and court filing fees).

Finally, the claims administrator's costs are $13,892.54, which covers the sending of notice, the processing of claim forms, the maintenance of the settlement fund, and the distribution of settlement checks. These costs are reasonable under the circumstances and should be approved. *See Graham*, 2022 U.S. Dist. LEXIS 224376 at *34 (approving claims administrator fee of $18,722.00 to cover the cost of processing and mailing settlement payments to Settlement Class members).

### 8. The service award to Plaintiff should be approved.

Likewise, the Court should approve the $10,000 service award to Plaintiff as contemplated in the Settlement Agreement. Doc. 46-1. To date, no class member has objected the service award of $10,000 to Plaintiff. None of the class members would have recovered anything without Plaintiff's efforts. The service award is reasonable and should be approved. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"). This is especially true in employment litigation. *See Velez v. Majik*

26

*Cleaning Servs., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see also Ford*, 2022 U.S. Dist. LEXIS 35052, at *13-15 (explaining why incentive award was proper). Plaintiff asks that the Court approve the service award to Plaintiff. As noted previously, the award is in line with similar cases. Doc. 45, p. 31, Plaintiff's Preliminary Approval Motion, citing cases.

9. **Conclusion**

For the reasons set forth above, Plaintiff respectfully requests that the Court:

(1) Grant final approval of the proposed settlement and direct the Parties to carry out the remaining terms;

(2) Certify the case as a Rule 23 class action and Fair Labor Standards Act collective action for settlement purposes;

(3) Find that Defendants complied with their notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715;

(4) Grant final approval of the service award for Plaintiff Carvis Williams;

(5) Grant final approval of Class Counsel's request for attorneys' fees and costs;

(6) Permanently enjoin Plaintiff and all Settlement Class Members who cash or otherwise negotiate their settlement check form prosecuting against Defendants and Released Parties (as defined in the Agreement) any and all claims released in the Settlement; and

(7) Dismiss the action with prejudice, with the Court to retain jurisdiction to enforce the Settlement.

Respectfully submitted,

*/s/Laura E. Farmwald*
Mary-Ann Leon
N.C. State Bar No. 26476
The Leon Law Firm, P.C.
704 Cromwell Dr., Ste E
Greenville, NC 27858
Telephone: (252) 830-5366
*maleon@leonlaw.org*
www.leonlaw.org
Local Rule 83.1(d) Counsel

Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
Laura E. Farmwald (By Special Appearance) (Ohio
Bar #0095304)
8044 Montgomery Road, Suite 515
Cincinnati, Ohio 45236
Telephone: 513-715-8712
Facsimile: 614-340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*

www.billerkimble.com

Counsel for Plaintiffs


## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the Memorandum in Support of the Motion for Final

Approval contains 8,398 words and is in compliance with the April 18, 2023, Order granting

Plaintiff an additional 2,500 words beyond what is called for in Local Rule 7.3(d)(1), for a total

permissible word count of 8,750.


*/s/Laura E. Farmwald*
Laura E. Farmwald

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon counsel for Defendants through the Court's ECF system.

/s/Laura E. Farmwald
Laura E. Farmwald